KRAFT v. RECH.

*Wills—Estates vest at testator's death, when—Where will ambiguous or doubtful estate vests at earlier date—Settled technical rules resorted to in construing will, when.*

1. In Ohio estates vest at the death of the testator, in the absence of words in the will to the contrary.
2. Where the will is ambiguous, and there is doubt as to the particular time at which the estate shall vest, it will be construed to vest as of the earlier date.
3. When all parts of a will have been considered, and the intention then remains ambiguous, resort may be had to settled technical rules of construction for aid in arriving at a proper solution of the difficulty.

(Decided April 22, 1926.)

APPEAL: Court of Appeals for Summit county.

*Messrs. Rockwell & Grant,* for plaintiff.

*Messrs. Doolittle, Foust & Holden,* for defendant.

FUNK, J.  This case is here on appeal by defendant from the court of common pleas, which entered its decree in favor of the plaintiff.

Plaintiff filed her petition to partition certain real estate in Summit county, alleging, in substance, that she is the owner and entitled to the undivided one-half thereof under the will of her grandfather, John Frederick Rech, as the only child and heir at law of Henry C. Rech, who died intestate in May, 1916, and was the devisee of said undivided one-half under said will; that all the debts of his estate were paid; and that Margaret Rech, the wife of said testator, who had a life estate therein, died September 29, 1924.

Defendant filed his answer, admitting that John F. Rech died seized of said real estate, the probate of his will, the death of Henry C. Rech, and of the widow, Margaret Rech, and the settlement of the estate of Henry C. Rech—all as stated in the petition—but denied the right of plaintiff to partition because of the death of Henry C. Rech prior to the termination of the life estate of the widow.

A reply was filed to the answer by way of general denial.

Plaintiff's right to partition depends upon the construction placed upon said will.  The parts of the will and codicil necessary to a determination of plaintiff's right to partition are as follows:

## Will.

"* * * The residue of my estate real and personal I give and bequeath to my beloved wife during her natural life and after her death what-

soever there is left of the estate, is to be divided between my two sons to my son William G. Rech one-half to my son Henry C. Rech one-half less two hundred dollars to be given to his daughter Ethel when she gets married but in case my son Henry dies then his daughter to have four hundred dollars the balance to go to my son William G. Rech.''

### Codicil.

''I wish to give to my beloved wife the right to sell any real estate if necessary for her support and give deed to the purchasers. I also wish to give to our daughter Ethel five hundred dollars in the place of the two hundred dollars mentioned in my will. Which is to be given to her when she is of age.''

The question at issue under this will and codicil is: Did the estate devised to the two sons, William G. and Henry C. Rech, vest at the time of the death of the testator, John Frederick Rech, or were their interests only contingent and not vested in them until the time of distribution, to wit, the termination of the intermediate life estate? If it vested at the time of the death of the testator, then plaintiff is entitled to partition; but if it did not vest until the termination of the life estate, then she is not entitled to partition.

The case was tried upon an agreed statement of facts, which shows that the will was dated June 28, 1898; that said plaintiff, Ethel M. Rech, was adopted by her grandparents, the testator and his wife, on August 23, 1898; that the codicil was made December 24, 1900; that the testator died September 29, 1903; and that Henry died after the death

of his father, but before that of his mother, who had the life estate.

The question is raised as to whether the testator did not intend by the codicil to revoke the latter part of the will in reference to the death of Henry.

It will be observed that the codicil gives "to our daughter Ethel five hundred dollars in the place of the two hundred dollars mentioned in my will, which is to be given to her when she is of age," and that it says nothing about what she is to have in case Henry dies.

If it be assumed that the testator did not intend by the codicil to revoke and cancel the latter part of the will in reference to the death of Henry, and substituting in the will the wording in the codicil as to Ethel, the will as so modified by the codicil in reference to Ethel and Henry should then read as follows:

"To my son Henry C. Rech one-half less five hundred dollars to be given to his daughter Ethel when she is of age, but in case my son Henry dies then his daughter to have four hundred dollars the balance to go to my son William G. Rech."

It will be seen that this wording would give the daughter $500 if Henry lives, and only $400 in case he dies, and the balance to go to William, which would seem to be unreasonable and inconsistent, as there could be no good reason for giving Ethel $500 if Henry lives and only $400 if he dies. Hence, to make the will reasonable and consistent, one must either read into the codicil, and thereby into the will, that Ethel is to have $500 whether Henry lives or dies, or hold that the codicil eliminates from the will the alternative as to the death of Henry; and if the latter is done, there could be no

question but that the intention of the testator was
that the estate should vest in the sons at the time
of his death; and, since the codicil specifically
says the $500 is to take the place of the $200, and
says nothing about what Ethel is to have if Henry
dies, we think that it was the intention of the testa-
tor to revoke or cancel the latter part of the will
in reference to the death of Henry. This view is
further strengthened when considered in connection
with the fact that even though plaintiff was the
granddaughter of testator he adopted her as his
own daughter, after the making of the will and
before the making of the codicil.

Moreover, even if the will and codicil together
are construed to mean that Ethel is to have $500
when she is of age, and after the termination of
the life estate, whether Henry lives or dies, as
seems to be conceded by the tender of defendant
for that amount, it would seem that even such
construction would necessarily require that the
estate vest at the time of the death of the testator,
because the $500 is to come out of Henry's half,
and, if the title does not vest at the death of the
testator, then Henry would have no half out of
which it was to come.

However, be that as it may, and assuming that
the latter part of the will in reference to the death
of Henry is not changed by the codicil, we still
have the question, Does the survivorship of Henry,
as expressed in the words, "but in case my son
Henry dies," have reference under the wording of
the will to the time of the death of the testator,
or to the time of the termination of the life estate
of the widow?

The controlling principle in the construction

of wills is the ascertainment of the intention of the testator, which intention must be sought in the terms of the whole will, which intention, when once ascertained, must control; but if from the language of the will, when all parts have been considered, the intention remains ambiguous, resort will be had to settled technical rules of construction for aid in arriving at a proper construction and solution of the difficulty.

Of all the decisions of the Supreme Court of Ohio cited by attorneys on both sides of this case, it was held in the following cases that the estate did not vest until the time of distribution or the termination of the intermediate life estate: *Sinton* v. *Boyd,* 19 Ohio St., 30, 2 Am. Rep., 369; *Richey, Ex'r.,* v. *Johnson,* 30 Ohio St., 288; *Hamilton* v. *Rodgers,* 38 Ohio St., 242; *Barr* v. *Denney,* 79 Ohio St., 358, 87 N. E., 267.

And of all the other decisions of our Supreme Court cited by attorneys on both sides the following hold that the title vested upon the death of the testator: *Jeffers* v. *Lampson,* 10 Ohio St., 101; *Linton* v. *Laycock,* 33 Ohio St., 128; *Collier* v. *Grimesey,* 36 Ohio St., 17; *Baker* v. *McGrew,* 41 Ohio St., 113; *Bolton* v. *Bank,* 50 Ohio St., 290, 33 N. E., 1115; *Johnson* v. *Johnson,* 51 Ohio St., 446, 38 N. E., 61; *Renner* v. *Williams,* 71 Ohio St., 340, 73 N. E., 221; *Tax Comm.* v. *Oswald, Exrx.,* 109 Ohio St., 36, 141 N. E., 678.

We, of course, cannot go into a detailed analysis of all these cases within the limits of this opinion, and do not believe it necessary to do so, but deem it sufficient, for the purposes of this opinion, to refer to certain general features of the two groups of cases. It will be observed that in the cases in

the first group, holding that the estate does not vest until the time of distribution, the will provided either that the executors should have charge of the property and divide or sell and divide, or pay *not* to specified persons or a definite class but to persons *not* ascertained, and who may or may not be in being at the time of the death of the testator, *or* that the gift was found only in the direction to divide or to sell and divide or pay at a future time, *or* that there were words of survivorship in each of these cases which clearly indicate that the estate should not vest until the time for distribution, and that the decision in each of those cases was based upon one or more of the above-mentioned provisions.

It will be further observed that the cases in the second group, which hold that the title vests upon the death of the testator, follow and adopt the rule that the law favors the vesting of estates at the death of the testator, in the absence of words of survivorship indicating that they shall not so vest until the time of distribution, and that where the will is ambiguous, or there is any doubt as to the particular time at which the estate shall vest under a particular will, it will be construed to vest at the earlier of the two dates, and that this is now the settled rule in Ohio. A careful reading of the cases in the first group will disclose that they are in reality not in conflict with this rule, as they are based on some particular wording of the will, as hereinabove pointed out.

From our examination of these decisions and various authorities on this question we are all of the opinion that the wording of the will in question here is more nearly allied to the wording of

the wills construed in the second group of cases above mentioned, in which the estate was held to vest at the death of the testator, and that this case comes within the doctrine and principles announced in the second group of cases, and not within those of the first, holding that the estate does not vest until the time of distribution or the termination of the life estate.

The will in the instant case does not place the property in the control of executors to divide among persons not ascertained or in being, nor is the gift found only in a direction to executors to divide, nor are there any words of survivorship clearly indicating that the estate should not vest until the time for distribution, but, on the contrary, there is a direct gift to specified individuals in being, without any directions to or control by executors, or anything to be done by executors or any one else in the future before title could vest.

Furthermore, there is nothing in the wording of the will in the instant case to indicate the time to which the words, "but in case my son Henry dies," shall have reference, and, in the absence of such words, so indicating, under the rule established in the second group of cases above mentioned we must come to the conclusion that they have reference to the death of the testator, and not to that of the life tenant.

We are therefore unanimously of the opinion, that, whether or not the codicil is construed to revoke and cancel the latter part of the will in reference to the death of Henry, the testator intended that the fee in remainder should vest in the two sons at the time of his death, and a decree may be drawn accordingly in favor of the plaintiff, and

the cause remanded to the common pleas court to carry the same into execution, and for further proceedings according to law.

*Decree for plaintiff.*

PARDEE, P. J., and WASHBURN, J., concur.